[Civ. No. 19660.   First Dist., Div. One.   Mar. 19, 1962.]

HASKELL CARO et al., Plaintiffs and Respondents, v. W. A. SAVAGE, as State Real Estate Commissioner, Defendant and Appellant.

Stanley Mosk, Attorney General, Carl W. Wynkoop and Gerald F. Carreras, Deputy Attorneys General, for Defendant and Appellant.

James E. Fredricks and Fredricks & Sullivan for Plaintiffs and Respondents.

SULLIVAN, J.—This is an appeal by W. A. Savage, Real Estate Commissioner of the State of California, from a judgment granting respondents' petition for a writ of mandate and commanding said commissioner to vacate, annul and set aside his decision revoking the real estate licenses of the respondents Haskell Caro, Clay Henry Buschman and Buschman Realty Co., a corporation.

All three respondents were licensed by the Division of Real Estate of the Department of Investment of the State of California. Prior to July 31, 1958, Caro had been licensed as a real estate salesman; on and after that date as a real estate broker. Buschman was licensed as a real estate broker and a business opportunity broker under the firm name and style of Buschman Realty. Commencing on January 8, 1959, Buschman Realty, a California corporation, to which we will here-

after refer as the corporation, was licensed as a real estate broker by and through Caro, as its secretary-treasurer. Although incorporated on June 4, 1958, such corporation was not licensed as a real estate broker during the period from June 4, 1958, to January 8, 1959.

On March 26, 1959, an accusation was filed before the commissioner against respondents charging them in two separately stated causes of action with violations of the Business and Professions Code arising out of a certain real estate transaction.

. In the first cause of action, it was alleged that the corporation, through Caro, listed certain improved real property for sale; that Buschman and Caro, individually and as officers of the corporation, presented to the sellers an offer from one Lilly Schwenger to purchase the property; that Lilly Schwenger was not a bona fide purchaser but was actually the wife of Buschman who was buying the property for his own account; that Buschman and Caro, individually and as officers of the corporation wilfully and fraudulently concealed from the sellers the fact that Lilly Schwenger was the wife of Buschman and that he was buying the property for the purpose of reselling it at a secret profit; and that such facts were concealed for the further purpose of enabling Buschman and Caro to collect a real estate commission on the sale. The accusation charged that such conduct constituted violations by Caro of section 10176, subdivisions (a), (g) and (i), and section 10177, subdivision (f); by Buschman of the same sections and in addition of section 10302, subdivision (e); and by the corporation of sections 10130 and 10177, subdivisions (d) and (f).

In the second cause of action it was alleged that Buschman and Caro, individually and as officers of the corporation, after having opened an escrow at a title company for the purpose of completing the above sale, without the sellers' knowledge, obtained the consent of the beneficiary and owner of the second deed of trust on the property to accept the sum of $1,800 in full settlement of the indebtedness secured by such deed of trust which then amounted to $1,985; that although only $1,800 was paid from funds in escrow in payment of such indebtedness, the sellers were charged with $1,985 and the difference of $185 was paid to Buschman Realty; that Caro, individually and as an officer of the corporation, caused a statement to be delivered to the sellers falsely showing such payment of $1,985; and that both Caro and Buschman, indi-

vidually and as officers of the corporation, concealed the true facts of the above payment from the sellers. The accusation charged that such conduct set forth in the second cause of action constituted violations by Caro and Buschman of the same sections of the Business and Professions Code with which they were respectively charged in the first cause of action; and by the corporation of section 10177 only.

The record of the administrative hearing discloses the following facts: By an agreement entered into on May 28, 1958, Buschman agreed to sell to Caro and one Daniel F. Sullivan his real estate business known as Buschman Realty, together with furniture, fixtures, membership in the Multiple Listing Service of San Francisco and good will.[1] In order to effect a transfer of the multiple listing service membership according to the rules of that association and because both Caro and Sullivan were licensed as salesmen and not as brokers, it was agreed that the real estate business would be transferred to a corporation. Such corporation would manage and control the real estate business. It would be entitled to use the name Buschman Realty for the period of a year. It was also agreed that Buschman would be one of the first directors.

In accordance with the above agreement, Buschman Realty, a California corporation, was incorporated on June 2, 1958. Buschman, James E. Fredricks and Frank Kudelka were its incorporators, first directors and subsequently were elected president, vice-president and secretary-treasurer respectively. By corporate resolution Caro and Sullivan were appointed co-managers of the corporation. The last two persons also owned all of the stock. According to the testimony of Caro, Buschman became an officer and director only to secure the multiple listing membership, it being the declared intention of the parties in their agreement above mentioned to transfer such membership and change the name of the corporation at the end of the year. Caro testified that Kudelka ''was listed as the employing broker as the Secretary-Treasurer of the corporation.'' No one connected with the firm was licensed under Buschman himself, although he retained his own broker's license. Apparently some confusion resulted from the fact that such license was carried under Buschman's former designation as an individual doing business as Buschman Realty. After Caro became licensed as a real estate

---

[1] By the same agreement, Buschman agreed to sell his insurance business to one O'Shea. This aspect of the agreement is not involved here.

broker on July 31, 1958, Kudelka resigned as officer and director and Caro took his place.

The real estate business of Buschman Realty, owned by Caro and Sullivan, was conducted by them at the same address at which Buschman, as an individual, had conducted it before the sale. These premises were held under a three-year lease from Clay and Lilly Buschman to Buschman Realty Company, a California corporation. The corporation, by lease of identical date and term, sublet to Buschman "Desk Space to be used as Loan Business, phone calls, and receiving mail . . . ."

Despite the formation of the above corporation, the issuance of its stock to Caro and Sullivan and the above lease and sublease, Caro testified that Sullivan and he never operated the real estate business through the corporation but conducted the same as a partnership, the corporation being used merely to hold the multiple listing service membership. They had no written partnership agreement; nor did they ever file a certificate of doing business under the name of Buschman Realty. No real estate license was ever issued to such partnership. Caro considered the Buschman Realty to be the Caro-Sullivan partnership. They maintained two checking accounts: a trust account in the name of Buschman Realty Co. and a personal account in their own names. Buschman made no sales for the Buschman Realty and received no commissions from it. Buschman testified that after he sold his real estate business to Caro and Sullivan on June 1, 1958, he did not thereafter remain active "in the brokerage end" of the real estate business but was engaged in buying and selling properties. He had no authority to sign checks for Buschman Realty and had no managerial responsibilities concerning the operation of the real estate business.

On July 28, 1958, Jim Wheelis and Macy Wheelis, his wife, hereinafter referred to as the sellers, owned certain improved real property in San Francisco. By a written authorization bearing that date, they granted to Buschman Realty, a California corporation, the exclusive right for a period of three months to sell their property for the price of $13,500. This authorization expired on October 28, 1958, and at that time was extended until March 1, 1959. Such written authorization was under the corporate name of the realty company and was accepted in such name by Caro, such corporate name being impressed in both places on the document by a stamp. Caro explained this by stating that "what someone in the office did

do was to take our pad and go through the whole batch and stamp them. . . . I have since thrown all those away.'' He claimed that the corporate name was used inadvertently.

Some time later, Buschman became interested in the property and decided to make an offer to purchase it for $10,500 using the name of his wife, Lilly Schwenger. He testified that he made this offer to Caro but had no contact whatsoever with Mr. and Mrs. Wheelis, the sellers. Caro prepared the deposit receipt for such an offer, Buschman signed his wife's name, and Caro had Daniel F. Sullivan sign the document for Buschman Realty Co. as agent for the sellers. Caro then mailed the deposit receipt to the sellers who were in Guam. Caro did not, either in his letter of transmittal, or at any other time, disclose to the sellers the identity of Lilly Schwenger or the fact that Buschman, himself, was purchasing the property. The sellers accepted the offer and agreed to pay Buschman Realty Co. a 5 per cent commission on the sale, amounting to $525. The sellers then conveyed the property to Lilly Schwenger, Buschman himself paying the purchase price. Caro attended to the closing of the sale at the title company.

As we have heretofore mentioned, the sellers' property was encumbered by a second deed of trust securing a promissory note held by one May McInerney. Caro contacted Mrs. McInerney and offered her $1,750 in full payment of her note, of which the unpaid balance was $1,985. She later agreed to take $1,800. He signed sellers' instructions authorizing the disbursement, not of $1,800 but of $1,985 to pay off the second deed of trust. Such amount was charged against the sellers. Caro testified that he did this because the sellers had forced him to reduce his real estate commission from 6 per cent to 5 per cent. He also testified that he did not inform Buschman of these arrangements. The full amount of the indebtedness was charged in the sellers' instructions, according to his testimony, because of advice he received at the title company: ''I was told that that would be the proper way to do it; . . .'' Caro of course did not disclose to the sellers that the second deed of trust was being paid off for a reduced amount.

Upon the closing of the transaction, the title company paid to Buschman Realty, according to Caro's instructions, the sum of $681.06, representing the real estate commission of $525 plus the $185 discount from the McInerney second deed of trust, less the sum of $28.94 chargeable for proration of taxes.

This check was endorsed "Buschman Realty, Daniel F. Sullivan, Haskell Caro" and deposited it in the personal account of Sullivan and Caro.

Thereafter Buschman sold the property to one Orbelina H. Castro for $14,500 and had his wife, under the name of Lilly Schwenger, convey the property to Mrs. Castro on January 20, 1959. Buschman testified that he never received a commission on the sale of the property to him or on his resale to Mrs. Castro.

The accusation filed before the commissioner was based on the premise that Buschman Realty, a corporation, was "under the supervision, dominance, and control of respondents, Caro and Buschman" and that both of said respondents "individually and as officers of said corporation" presented the offer of Lilly Schwenger to the sellers, concealed from them the true facts of the transaction and in addition obtained a reduction of the McInerney indebtedness. At the administrative hearing the respondents filed a stipulation executed by them in which they admitted in general the occurrence of the transaction set forth in the accusation. In such stipulation, however, Caro denied that the acts complained of were done by him as an officer of the corporation and Buschman denied that he personally participated either as an officer of the corporation or individually in presenting the offer to the sellers or in arranging for the reduction of the McInerney indebtedness. In essence, the theory of the accusation was to connect both Buschman and Caro with the corporation and thus with each other so that Buschman would be implicated in the transaction carried on by Caro. The theory of the respondents in defense was that Caro did not act for the corporation, but for the Caro-Sullivan "partnership" with which Buschman had no connection.

The hearing officer found that Caro, Sullivan and Buschman were engaged in the real estate business in the name of Buschman Realty, a corporation (thus establishing the connection between Buschman and Caro), and that in so doing, pursuant to the agreement of May 28, 1958, they were engaging in the real estate business without having first obtained a real estate broker's license. He made the additional findings, of significance here, that Buschman acting through Caro in the name of the corporation presented the offer on behalf of Lilly Schwenger, that Buschman and Caro concealed the true facts of the transaction from the sellers, that Buschman par-

ticipated in the commission paid on the sale, that Buschman and Caro obtained the discount from Mrs. McInerney and concealed the same from the sellers, and that in the accomplishment of the purchase of the real property, the procurement of the commission and the securing of the discount, Buschman and Caro were acting for the individual benefit of each but to accomplish their purpose they acted as officers of Buschman Realty, a California corporation and in the name of said corporation.

Upon such findings the hearing officer determined that respondents Buschman and Caro had violated the following sections of the Business and Professions code: On the first cause of action: section 10176, subdivisions (a) and (i) and section 10177, subdivision (f); on the second cause of action: section 10176, subdivisions (a), (g) and (i) and section 10177, subdivision (f).[2] It was also determined that by reason of the facts found with respect to both causes of action and by reason of section 10302, the business opportunity license of

---

[2]Section 10176 of the Business and Professions Code provides in part: "The commissioner . . . may temporarily suspend or permanently revoke a real estate license at any time where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following:

"(a) Making any substantial misrepresentation.

"  .  .  .  .  .  .  .  .

"(g) The claiming or taking by a licensee of any secret or undisclosed amount of compensation, commission or profit or the failure of a licensee to reveal to the employer of such licensee the full amount of such licensee's compensation, commission or profit under any agreement authorizing or employing such licensee to do any acts for which a license is required under this chapter for compensation or commission prior to or coincident with the signing of an agreement evidencing the meeting of the minds of the contracting parties, regardless of the form of such agreement, whether evidenced by documents in an escrow or by any other or different procedure.

"  .  .  .  .  .  .  .  .

"(i) Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing."

Section 10177 provides in part: "The commissioner may suspend or revoke the license of any real estate licensee, or may deny the issuance of a license to an applicant, who has done any of the following:

"  .  .  .  .  .  .  .  .

"(f) Acted or conducted himself in a manner which would have warranted the denial of his application for a real estate license."

Section 10302 provides in part: "The commissioner may suspend or revoke the license of any business opportunity licensee, or may deny the issuance of a license to an applicant, who has done any of the following:

"  .  .  .  .  .  .  .  .

"(e) Acted or conducted himself in a manner which would have warranted the denial of his application for a business opportunity license."

the respondent Buschman was subject to disciplinary action. As a result, the real estate broker's licenses of Buschman, Caro and Buschman Realty, a corporation, as well as the business opportunity broker's license of Buschman, were revoked.

Respondents thereupon filed a petition for a writ of mandate in the superior court contending that: 1) respondents did not have a fair trial; 2) respondents suffered a prejudicial abuse of discretion in that: (a) the commissioner did not proceed in the manner required by law; (b) the commissioner's decision was not supported by the findings and the findings were not supported by the evidence; and (c) the decision was excessive and contrary to law. The transcript of the administrative proceedings and the exhibits received in evidence in such proceedings were received in evidence in the trial court and the case thereupon submitted to such court on the same evidence. Respondents' first contention was rejected, the trial court finding that respondents had a fair trial in the administrative proceedings. The court found, however, that respondents suffered a prejudicial abuse of discretion by the commissioner in that the commissioner's decision was not supported by the findings and the findings were not supported by the evidence that the weight of the evidence did not support the findings and that "the Commissioner did proceed without or in excess of his jurisdiction; . . ." Upon such trial court findings, the writ of mandate was granted and the commissioner's decision ordered set aside and annulled.

The trial court in this case was authorized to exercise its independent judgment on the evidence of the administrative hearing without being bound by the findings made at the conclusion of such hearing. (Code Civ. Proc., § 1094.5, subd. (c); *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *McPherson* v. *Real Estate Comr.* (1958) 162 Cal.App.2d 751, 752 [329 P.2d 12]; *Manning* v. *Watson* (1952) 108 Cal.App.2d 705, 712 [239 P.2d 688].) We are presented on this appeal, therefore, with the sole question whether, viewed according to the familiar principles, there is any substantial evidence contradicted or uncontradicted which will support the trial court's findings. (*McPherson* v. *Real Estate Comr., supra*; *Manning* v. *Watson, supra*.)

The trial court found in effect that the administrative findings were not true. The court did not itself substitute specific findings in their place. Although the trial court's findings are therefore broad, it is apparent that it impliedly found that, in respect to the real estate transaction involved, there was no

connection or concert of action among Buschman, Caro and the corporation. There is ample evidence in the record to support this conclusion of the trial court. Caro testified that he and Sullivan had purchased the real estate business from Buschman; that they never operated such business through the corporation but considered that they were in partnership together. Both Caro and Buschman testified that the corporation was being used merely to hold the multiple listing service membership. Although Buschman was an officer of the corporation, nevertheless both Caro and Buschman testified that Buschman took no active part in the real estate business. Both testified that Buschman did not share either in the $525 commission paid on the sale from Mr. and Mrs. Wheelis to Buschman (through Lilly Schwenger) or in the $185 realized from the McInerney discount. The evidence shows that such funds were deposited in a personal bank account of Caro and Sullivan, in which Buschman had no interest and over which he had no control.

While the evidence in the record may have supported the administrative finding that Buschman and Caro were *acting in concert* and were using the corporation to accomplish their purpose, it also supports the finding of the trial court that such was not true and that Buschman and the corporation had no connection with Caro as the representative of the sellers. The trial court, in effect hearing this matter de novo, was entitled to exercise its independent judgment on the effect and weight of the evidence. (*McPherson* v. *Real Estate Comr.,* 162 Cal. App.2d at page 754.)

As a result the court below determined that, in the real estate transaction at hand, there was no connection between Buschman or the corporation with Caro and that it was Caro and Sullivan, using the name Buschman Realty, but not the corporate entity, who were the agents for the sellers and as such owed to the sellers the usual duties derived from such relationship. On this determination, neither Buschman nor the corporation was the sellers' agent or owed them any duties of such a fiduciary.

Appellant has referred us to a number of cases emphasizing the fiduciary relationship existing between a real estate broker and his client including the case of *Buckley* v. *Savage* (1960) 184 Cal.App.2d 18 [7 Cal.Rptr. 328] (cert. den. 366 U.S. 910 [81 S.Ct. 1086, 6 L.Ed.2d 235]), which, appellant feels, bears a great resemblance to the facts of this action. *Buckley*

held that a failure by a real estate broker to disclose to the seller, who was his principal, that the broker was the buyer of the property constituted sufficient grounds to justify revocation of his license, since, as an agent charged with the same obligation of undivided service and loyalty as a trustee, he was bound to disclose all material facts about the transaction which might affect his principal's decision. We do not question the legal principles so stated. They simply do not apply to respondents Buschman and the corporation, because the trial court determined that those two respondents were not the agents of the sellers.

Appellant contends that the conduct and acts of both Buschman and Caro were illegal. In support of this proposition he points out that the corporation was never licensed during any of the time in question; that all of Caro's acts were as a real estate salesman through such unlicensed corporation; that, assuming Caro and Sullivan operated as a partnership, such partnership did not have such a license; and that, although Caro himself was issued a broker's license on July 31, 1958, at no time was he licensed by or through any partnership with Sullivan or by or through the corporation.[3] These arguments, however, do not establish a connection between Buschman and Caro. Conceding that the activities of Caro and Sullivan as real estate partners were illegal, it does not of necessity follow that they were acting through the corporation. There was evidence to support the trial court's finding that they were not acting through the corporation. Caro was issued a real estate broker's license on July 31, 1958. At the time the exclusive authorization to sell was returned to him by the sellers from Guam (which Caro stated was some time in August), at the time of its renewal and at the time of the Wheelis-Schwenger transaction, Caro was licensed, although the Sullivan-Caro partnership was not. This circumstance was consistent with the trial court's apparent conclusion that Caro was not acting through the corporation.

We hold therefore that there was sufficient evidence to support the trial court's finding that Buschman and the corporation had no connection with Caro in the listing and sale of the sellers' property, that there was no fiduciary relationship between Buschman and the sellers, and that therefore he had breached no obligations owing to the sellers for which he could be disciplined.

---

[3]Appellant cites Bus. & Prof. Code, §§ 10158, 10159, 10211, and 10212.

We next consider the sufficiency of the evidence insofar as it pertains to the respondent Haskell Caro. In his closing brief, the appellant commissioner contends that the facts relating to the conduct of respondent Caro charged under the second stated cause of action are uncontroverted, that the determination of their effect is therefore a matter of law upon which the findings of the trial court are not controlling and that, as a matter of law, such conduct constituted violations of the Business and Professions Code, for which discipline was properly imposed by the commissioner. These contentions have merit.

The record discloses no conflict in the evidence relating to Caro's conduct covered by the second stated cause of action, except possibly in minor details. Without any contradictory evidence the following facts are clearly established by the oral and documentary evidence including the formal admissions of fact contained in Caro's signed stipulation which was also made a part of the record: He opened an escrow with the title company for the purpose of completing the sale from Mr. and Mrs. Wheelis to Lilly Schwenger. Without the sellers' knowledge or consent he made arrangements with Mrs. McInerney, the holder of the second deed of trust, to accept $1,800 instead of the then unpaid balance of $1,985. Upon his directions, and without the sellers' knowledge or consent, the $1,800 was paid from the sellers' funds in the escrow, and the difference of $185 was paid to Buschman Realty, that is to Caro and Sullivan. He caused a statement, which he knew to be false, to be delivered to the sellers showing that $1,985 had been paid to Mrs. McInerney. During all of this time Caro was the agent of the sellers, occupying a fiduciary relationship as to them.

Such conduct violates the provisions of subdivisions (a), (g) and (i) of section 10176 of the Business and Professions Code.

Subdivision (a) of such section proscribes "any substantial misrepresentation." It is beyond question that Caro made such a misrepresentation when he caused a false statement to be sent to the sellers stating that $1,985 had been paid to Mrs. McInerney when only $1,800 had been paid.

Caro's subsequent conduct contravenes subdivision (g) in two respects: he not only took a secret and undisclosed compensation or profit but he also failed to disclose to the sellers the full amount thereof. The relationship existing be-

tween him and the sellers was of a fiduciary nature. In such a relationship, the law imposed upon him "the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary." (*Langford* v. *Thomas* (1926) 200 Cal. 192, 196 [252 P. 602].) He was not only bound to act towards them in the highest good faith but was precluded from obtaining any advantage over them by virtue of his agency. (*Calmon* v. *Sarraille* (1904) 142 Cal. 638, 641 [76 P. 486].) The McInerney obligation was an obligation of the sellers. If Caro could arrange for its payment at a reduced amount, such benefit belonged to his principals, not to him. His conduct resulted in his obtaining an advantage over his principals, accomplished by misrepresentation, falsification and concealment. ■■■■ Such conduct not only violated subdivision (g) above mentioned but constituted fraud and dishonest dealing in contravention of subdivision (i) of the same section.

■■■ It appears that the findings of the hearing officer on the second cause of action were as to Caro supported by uncontradicted evidence. The finding of the trial court, therefore, that such administrative findings were not supported by the weight of the evidence is clearly erroneous and itself devoid of evidentiary support. It is therefore clear that on this phase of the charge the commissioner did not proceed without or in excess of his jurisdiction.

Respondent Caro suggests, rather obliquely we think, that he was an agent for Mrs. McInerney as well as the sellers. This suggestion finds no support in the record. It is followed by the suggestion that Mrs. McInerney paid respondent the $185 for performing a service for her. We are not told by respondent what the service was or where in the record there is support for such an arrangement between him and Mrs. McInerney. Respondent's argument falls before the fact that Mrs. McInerney did not pay anyone anything. The money in the escrow from which the $185 was paid to respondent belonged to the sellers. They made the payment.

Finally respondent argues that the trial court found the allegations of the second cause of action to be insufficient to show a violation of the Business and Professions Code. Respondent fails to point out to us by reference to the record either in what respect such allegations are insufficient or how the trial court found them to be so.

The foregoing contentions of appellant which we find tenable are, however, confined to the second cause of action. He

does not argue that Caro's conduct under the first cause of action constitutes violations of any provisions of the Business and Professions Code as a matter of law. The trial court, as we have pointed out, concluded that Buschman and Caro were not acting in concert and that Buschman was not in a fiduciary relationship with the sellers. It follows that Buschman was dealing at arm's length in purchasing the property for himself. Caro did not acquire any interest in the property. There was thus evidence to support the court's conclusion that Caro was not guilty of taking a secret profit or of taking advantage of the sellers by purchasing the property for himself.

It is true that Caro presented to the sellers an offer purportedly on behalf of Lilly Schwenger knowing that Buschman was buying the property for himself or at least for himself and his wife as community property. It is also a suspicious circumstance that Buschman used the maiden name of his wife, when it is likely that the use of the name Buschman, which was the same as that of the real estate company operated by Caro, would have alerted the sellers and might have affected their decision to accept the offer. The trial court apparently concluded that in presenting such an offer, Caro did not make any misrepresentation and in the light of the particular facts of this case was not under a duty to disclose the identity of the buyer. It would appear that the court reached this conclusion from a consideration of the totality of the circumstances bearing upon said respondent's conduct and determined such facts did not show a violation of the statutes as charged in the accusation. We cannot say that such determination is without support of substantial evidence.

■ Respondent Buschman Realty Co., a corporation, was charged in the accusation filed before the Real Estate Commissioner with violations of section 10130 (engaging in real estate business without a license), section 10177, subdivision (d) (wilful disregard of the Real Estate Law) and section 10177, subdivision (f) (action or conduct which would warrant denial of an application for a license). The hearing officer however made no findings that such corporation had violated the above or any other sections of the Business and Professions Code, although the commissioner revoked the license of the corporation. In view of the very broad findings of the trial court, we are unable to ascertain upon what specific basis the court set aside the revocation of the corporation's license and we must therefore conclude that such action was

predicated on the grounds that the commissioner's decision in this respect was not supported by any findings whatsoever.

The decision of the commissioner revoking the licenses of all three respondents contained the following language: "Said penalties are separately and severally imposed and shall constitute the order of the Real Estate Commissioner of the State of California irrespective of the fact that on judicial review of this decision one or more of the determinations of issues herein shall be found to be contrary to fact or law." Although in respect to the respondent Caro, we in effect sustain the trial court on the first cause of action and overrule the trial court on the second cause of action, it is clear from the above quoted provision of the commissioner's decision that the disciplinary action against respondent Caro remains unaffected since "said penalties are separately and severally imposed." We are not prepared to say that the resultant penalty on such separate basis represents under the circumstances a clear abuse of discretion and hence that the commissioner should redetermine the discipline imposed. (*Cf. Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87-88 [17 Cal.Rptr. 488, 366 P.2d 816].)

The judgment of the trial court is therefore affirmed as to the respondents Clay Henry Buschman and Buschman Realty Co., a corporation, and reversed as to the respondent Haskell Caro.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied April 4, 1962, and respondents' petition for a hearing by the Supreme Court was denied May 16, 1962.