Filed 10/5/23  AMG Outdoor Advertising v. Cal. Office of Admin. Hearings CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AMG OUTDOOR ADVERTISING, INC., <br><br> Petitioner and Appellant, <br><br> v. <br><br> THE STATE OF CALIFORNIA OFFICE OF ADMINISTRATIVE HEARINGS, <br><br> Respondent, <br><br> CALIFORNIA DEPARTMENT OF TRANSPORTATION, <br><br> Real Party in Interest and Respondent. | B317500 <br><br> (Los Angeles County  Super. Ct. No. BS175084) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Cole & Loeterman and Dana M. Cole for Plaintiff and Appellant.

Holbrook, Montoya, Dadaian, Solares, DelRivo, Bowman, Berkebile and Nancy Naylor for Real Party in Interest and Respondent.

## INTRODUCTION

The California Department of Transportation (Caltrans) issued notices to AMG Outdoor Advertising, Inc. (AMG) for an unpermitted billboard in violation of the Outdoor Advertising Act (OAA). After a hearing, the administrative law judge (ALJ) issued a proposed decision directing AMG to remove the billboard and pay a penalty. Caltrans adopted the ALJ's decision. AMG and its sole officer, Alex Garcia (Garcia), filed a petition for a writ of administrative mandate directing Caltrans to set aside its final decision. The trial court denied the petition and the appeal followed.

On appeal, AMG contends the trial court applied the incorrect standard of review, and Caltrans failed to meet its burden in establishing AMG owned and operated the unpermitted billboard.[1] We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Billboard*

Caltrans is responsible for enforcing the OAA, which governs advertising displays situated within proximity to and in sight of state highways. (See Bus. & Prof. Code, § 5200 et seq.) The OAA prohibits the placement of any advertising display without first securing a permit. (Bus. & Prof. Code, § 5350; *Traverso v. People ex rel. Dept. of Transportation* (1996) 46 Cal.App.4th 1197, 1204.)

Poursalimi, Houshang & Shahnaz (PHS) owns the real property located at 1312-1314 East 16th Street in Los Angeles (property). On November 1, 2013, PHS, as lessor, and AMG, as lessee, entered into an Outdoor Advertising Lease Agreement for the property. Garcia, the sole officer of

---

[1] Garcia is not a party to the appeal.

AMG, signed the lease. The lease provided that the property would be leased to AMG for 20 years "for the purpose of erecting and maintaining an advertising sign thereon." The lease also stated, "In the event that [AMG] [was] unsuccessful in obtaining the necessary entitlement to construct its sign as designated herein within 120 days . . . , either party may cancel this lease upon 30 days written notice." As further discussed below, AMG challenges the admissibility of this lease at the administrative hearing.

On January 24, 2014, Caltrans issued notices of violation of the OAA to PHS for an unpermitted advertising display (billboard) on the property. At that time, the identity of the billboard operator was unknown. PHS did not remove the billboard or place it in compliance with the OAA. On August 15, 2014, Caltrans instituted an administrative action and filed an accusation against PHS, alleging violations of the OAA with a prayer for removal of the billboard and an assessment of penalties.

During discovery, Caltrans received documents from counsel for PHS pertaining to the billboard, including a copy of the Outdoor Advertising Lease Agreement between PHS and AMG. Based on the lease produced, on April 30, 2015, Caltrans issued notices of violation of the OAA to AMG for the unpermitted billboard. AMG did not remove the billboard or place it in compliance with the OAA. On June 22, 2015, Caltrans filed an amended accusation adding AMG as a respondent. A copy of the lease was attached to the amended accusation. AMG timely requested a hearing to challenge the amended accusation.

On August 24, 2015, PHS failed to appear at a scheduled hearing and after a default was declared, the matter as to PHS was remanded to Caltrans for a default decision. Thus, AMG was the only remaining respondent.

3

B. *Criminal Prosecution*

On July 3, 2014, prior to the filing of the amended accusation against AMG, the Los Angeles City Attorney's Office filed a misdemeanor complaint (*People v. AMG Outdoor Advertising, Inc. et al.*, case No. 4CA03603) charging AMG, Garcia, and another individual (Jon Keith Stephens) with various violations of the City of Los Angeles Municipal Code related to the operation of the billboard on the property.

C. *Administrative Hearing*

Over almost three years, the parties, jointly or separately, filed requests to continue the administrative hearing for a multitude of reasons including the pending criminal case and representations by AMG's counsel that Garcia would invoke his Fifth Amendment right at the hearing. A majority of these requests were granted.

The administrative hearing ultimately occurred on April 4, 2018, while the criminal matter was still pending. The following individuals testified at the hearing: two Caltrans employees, Raj Champaneri and George Anzo, and a City of Los Angeles employee, Frank Lara. Both Massoud Poursalimi, the individual owner of the property, and Garcia invoked their Fifth Amendment right and did not testify.

Champaneri, a Caltrans field inspector, testified he initially inspected the property upon receipt of a complaint of an unpermitted billboard. Champaneri searched the State's electronic database for permits. He determined there was no active permit for the billboard on the property. Thereafter, notices of violation of the OAA were issued to PHS as the property owner. The identity of the billboard operator was unknown at that time. At some point, a Caltrans attorney (Mark Berkebile) told Champaneri

4

that AMG was the billboard operator and provided him with the Outdoor Advertising Lease Agreement between PHS and AMG. Champaneri conducted another inspection of the property, checked the database for any permits, and again found no active permits. Based on the Caltrans attorney's representation and the lack of an active permit, notices of violation of the OAA were then issued to AMG. AMG did not correct the violations or remove the billboard.

Lara, City of Los Angeles assistant deputy superintendent of building, testified that as part of his job duties, he inspected billboards for compliance with Los Angeles City codes. Lara inspected the property after receiving a complaint of an unpermitted billboard. After arriving at the property, viewing the billboard, and searching the City's electronic database, Lara determined that there was never a permit issued for the billboard.

Anzo, Caltran's southern area manager for the Office of Outdoor Advertising, testified. He explained that when a property owner appeals from a notice of violation on the ground that the owner had no knowledge of the billboard or was not the billboard operator, it is Caltrans's custom and practice to rely on its legal division to obtain information not readily available from public records to identify the billboard operator. Anzo believed AMG was the billboard operator at the property. He explained that Berkebile provided Champaneri with a copy of the Outdoor Advertising Lease Agreement between PHS and AMG. Berkebile had received a copy of this lease from PHS's (later also AMG's) prior counsel. Anzo did not independently verify that AMG owned the billboard; rather his testimony was based on "conversations [he] had with other people" and the lease that was provided to him.

5

Caltrans sought to admit the Outdoor Advertising Lease Agreement into evidence. In his evidentiary ruling, the ALJ noted that "[t]his is about as thin a foundation as [he could] recall," but "the technical rules of evidence are greatly relaxed, including foundation" in administrative proceedings. The ALJ relied on a stipulation between the parties to continue a hearing date in the administrative proceeding, which was signed by attorney Raymond Haynes, then-counsel for PHS and AMG, on March 22, 2016. In relevant part, the stipulation stated: "On April 6, 2015, Caltrans received from PHS documents pertaining to the displays, including a copy of the Outdoor Advertising Lease Agreement between PHS and AMG. Subsequently, AMG was added as a respondent." The ALJ acknowledged a copy of this lease was not attached to the stipulation and there was no reference to a date. "[B]ut the title of the document in the stipulation matches this, and the timing of it seems to be according to snuff." The ALJ was "also relying on greatly" the fact that AMG had not denied ownership of the billboard at any point during this administrative proceeding. AMG counsel interjected and argued the ALJ was "construing a Fifth Amendment privilege against [Garcia]." The ALJ responded, "No, not at all." The ALJ explained that Caltrans met its burden of establishing the lease was what it purported to be and AMG had not provided any evidence "that would indicate [the lease] is an incorrect version or an outdated version or it involves some entity other than AMG." The ALJ emphasized that "the fact that Mr. Garcia didn't testify today, I don't care." Over AMG's objection, the ALJ found sufficient foundation for admission of the lease.

On June 15, 2018, the ALJ issued a proposed decision finding that AMG entered into a lease on the property on November 1, 2013, for the purpose of erecting and maintaining a billboard, and that AMG operated the

billboard without a permit, in violation of the OAA.  The ALJ recommended that Caltrans order AMG to remove the billboard from the property and impose $166,000 in penalties.

On July 12, 2018, Caltrans adopted the proposed decision as its final decision.

D. *Trial Court Proceedings*

On September 12, 2018, AMG and Garcia filed a verified petition for writ of administrative mandate directing Caltrans to set aside its final administrative decision.  On September 9, 2021, the trial court denied the petition and entered judgment in favor of Caltrans on October 4, 2021.

AMG filed a timely notice of appeal.

**DISCUSSION[2]**

A. *Standards of Review*

"Code of Civil Procedure section 1094.5 provides for judicial review of administrative orders and decisions.  (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514; *Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 483 (*Schmid*).) "Pursuant to Code of Civil Procedure section 1094.5, subdivision (b), '[t]he

---

[2]      At oral argument, counsel for AMG raised the issue of the ALJ's failure to stay (or continue) the administrative hearing pending the criminal proceeding.  By raising this argument for the first time at oral argument, AMG has forfeited the issue.  (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1185 [we will not consider an issue not mentioned in the briefs and "'raised for the first time at oral argument'"], disapproved on another ground in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 948, fn. 12; *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 [same].)

7

inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.''''  (*Schmid*, at pp. 483–484; accord, *Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 34.)  The writ petitioner has '''''the burden of proving that the agency's decision was invalid and should be set aside, because it is presumed that the agency regularly performed its official duty.''''  (*Schmid*, at p. 484.)'' (*Sky Posters Inc. v. Department of Transportation* (2022) 78 Cal.App.5th 644, 659.)

"When a petitioner contends the findings are not supported by the evidence in the administrative record, the standard of review in the trial court is either the substantial evidence or the independent judgment standard.  (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32.)  Under the former standard, the trial court will affirm the administrative decision if it is supported by substantial evidence from a review of the entire record, resolving all reasonable doubts in favor of the findings and decision.  (*Committee to Save Hollywoodland Specific Plan v. City of Los Angeles* (2008) 161 Cal.App.4th 1168, 1182.)  Under this 'deferential' standard, the trial court presumes the correctness of the administrative ruling.  (*Patterson Flying Service v. California Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 419.)  In contrast, where the independent judgment standard applies, the trial court exercises its independent judgment on the evidence in a limited trial de novo in which the court must examine the administrative record for errors of law and exercise its independent judgment on the evidence.  (*Clary* [*v. City of Crescent City*

(2017)] 11 Cal.App.5th [274,] 284.)" (*Inzana v. Turlock Irrigation Dist. Bd. of Directors* (2019) 35 Cal.App.5th 429, 440–441 (*Inzana*), fn. omitted.)

"Where the trial court has reviewed the entire record and determined there was substantial evidence to support the administrative decision, the appellate court's 'scope of review on appeal from such a judgment is identical to that of the trial court.' (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 149 (*Bixby*).) We review the administrative record to determine whether substantial evidence supports the agency's findings, rather than limiting review to the trial court's findings. (*San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2017) 12 Cal.App.5th 1124, 1145.) 'This deferential standard requires us to presume the correctness of the administrative ruling, as all reasonable doubts must be resolved in favor of it.' (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1077–1078.) Where the trial court has applied the independent judgment standard, however, 'an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence.' (*Bixby, supra*, 4 Cal.3d at p. 143, fn. 10.)" (*Inzana, supra,* 35 Cal.App.5th at p. 441.)

B. *Whether Independent Review Standard Applied*

AMG contends that the trial court erred by reviewing the ALJ's decision under the substantial evidence standard. This claim rests on AMG's assertion that the ALJ decision affected a fundamental vested right entitling AMG to the benefit of the trial court's independent judgment on review of the decision. The trial court rejected this contention, as do we.

Whether an administrative decision substantially affects a fundamental vested interest is decided on a case-by-case basis. (*Bixby, supra,*

9

4 Cal.3d at p. 144.) "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." (*Ibid.*) "In other words, we look to the nature of the right involved as opposed to the amount of harm or economic injury sustained." (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1059 (*JHK Enterprises*).) "'The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgment by a body lacking *judicial* power.'" (*Benetatos v. City of Los Angeles* (2015) 235 Cal.App.4th 1270, 1281.) "Fundamental vested rights are often found in the context of public employment rights, licensing decisions, public assistance benefits, and land use." (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 927.)

As a general rule, courts are less likely to find a fundamental vested right when a case involves or affects purely economic interests. (*JKH Enterprises, supra*, 142 Cal.App.4th at p. 1060; *Bixby, supra,* 4 Cal.3d at p. 145.) As a result, an administrative decision is not likely to affect a fundamental vested right just because it increases the costs of doing business, reduces a business's profits, or restricts a property owner's return to his or her property. (*E.W.A.P., Inc. v. City of Los Angeles* (1997) 56 Cal.App.4th 310, 325–326; *Benetatos v. City of Los Angeles, supra,* 235 Cal.App.4th at p. 1281.) For example, the substantial evidence standard has been found to apply to the review of agency decisions involving (1) the application of a nuisance ordinance resulting in the reduction of the hours of operation of an adult bookstore (*E.W.A.P., Inc. v. City of Los Angeles, supra*, at p. 325); (2) the required installation of a vapor recovery system to gasoline pumps that increased the cost of doing business (*Mobil Oil Corp. v. Superior*

10

*Court* (1976) 59 Cal.App.3d 293, 305); (3) the shutdown of a fourth new oil refinery due to permit violations, resulting in a reduction in the company's profits (*Standard Oil Co. v. Feldstein* (1980) 105 Cal.App.3d 590, 603–606); and (4) the denial of mobile home park owners' rent increase requests under rent control laws (*San Marcos Mobilhome Park Owners' Assn. v. City of San Marcos* (1987) 192 Cal.App.3d 1492, 1502).

No fundamental vested right is involved or substantially affected in the instant case. The ALJ's decision involved an unpermitted billboard on the property and required AMG to remove the billboard and pay a penalty of $166,000. The impact of the decision on AMG was "purely economic." AMG resists this conclusion by arguing that the ALJ made an adverse inference against AMG based on Garcia's invocation of his Fifth Amendment right at the hearing. This argument does not articulate the fundamental vested right held by AMG and how the ALJ's decision involved or substantially affected that right. Moreover, we address this wholly separate argument in the section below.

AMG exclusively relies on two federal district court cases to support its argument, *KLA-Tencor Corp. v. Murphy* (N.D. Cal. 2010) 717 F.Supp.2d 895 (*KLA-Tencor Corp.*) and *Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co.* (E.D. Penn. 1953) 14 F.R.D. 333 (*Paul Harrigan & Sons, Inc.*). In *KLA-Tencor Corp.,* the district court held that a corporation's assertion of its officer's Fifth Amendment right against self-incrimination in its answer to a cause of action in the complaint was properly treated as a denial and not deemed an admission. (717 F.Supp.2d at p. 907.) The court explained that where the corporation was a small company, requiring it to substantively answer the complaint would be tantamount to requiring an answer by an officer in contravention of his personal Fifth Amendment rights. (*Ibid.*) In

11

*Paul Harrigan & Sons, Inc.,* the Pennsylvania district court issued a protective order postponing discovery until the termination of a parallel criminal action. (14 F.R.D. at p. 334.) The court held that compelling discovery under the circumstances would contravene the Fifth Amendment rights of the individual defendants. (*Id.* at p. 335.) We are not persuaded that these federal cases have any application here. Accordingly, the trial court properly applied the substantial evidence test.

C. *Whether Caltrans Met Its Burden of Proof at the Administrative Hearing*

AMG asserts that Caltrans failed to meet its burden of proof because (1) the Outdoor Advertising Lease Agreement was not properly authenticated, (2) there was insufficient evidence that AMG built and operated the billboard on the property, and (3) the ALJ made an adverse inference against AMG based on Garcia's invocation of his Fifth Amendment right against self-incrimination.

1. *Authentication of the Outdoor Advertising Lease Agreement*

Caltrans submitted undisputed evidence that the billboard from the property was not permitted, in violation of the OAA. However, the sole document connecting AMG with the billboard was a copy of the Outdoor Advertising Lease Agreement between PHS and AMG. AMG contends there was insufficient foundation to admit the lease, and therefore Caltrans failed to meet its burden of proving AMG operated the billboard.

Writings must be authenticated before they are received into evidence. (Evid. Code, § 1401.) Authentication means either the introduction of evidence sufficient to sustain a finding that the writing is what the proponent

12

claims it is, or "the establishment of such facts by any other means provided by law" (e.g., by stipulation or admission). (Evid. Code, § 1400, subd. (b).) In the Evidence Code or elsewhere, the statutory listing of means of authentication is not exclusive. (Evid. Code, § 1410.) There is no strict requirement as to how a party authenticates a writing. (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674.) A court can rely on indirect and circumstantial evidence to establish the authenticity of a writing. (*People v. Landry* (2016) 2 Cal.5th 52, 87.)

As AMG correctly notes in its briefing, adherence to the technical rules of evidence is not required in an administrative hearing. (Gov. Code, § 11513, subd. (c).) In an administrative hearing, "[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (*Ibid.*; see *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 158–159.) "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subd. (d).)

The ALJ heavily relied on the stipulation in ruling that Caltrans had met its burden to authenticate the lease. As previously noted, the stipulation was entered into between Caltrans, PHS, and AMG through their respective attorneys of record. The stipulation stated, in pertinent part, "On April 6, 2015, Caltrans received from PHS documents pertaining to the displays, including a copy of the Outdoor Advertising Lease Agreement between PHS

13

and AMG.  Subsequently, AMG was added as a respondent."  The stipulation was signed by Haynes, then-counsel for PHS and AMG, on March 22, 2016.

We acknowledge the stipulation relied on by the ALJ only concerned a request for continuance of the administrative hearing.  The parties did not stipulate to the authenticity of the lease, and the referenced lease was not attached to the stipulation.  However, the stipulation was signed by AMG's then-counsel and therefore the admissions of fact made in the stipulation were binding on AMG.  There is no dispute Haynes signed the stipulation as counsel of record for AMG.  Thus, "responsible persons . . . in the conduct of serious affairs" would be accustomed to relying on the stipulation as evidence of factual admissions made by AMG through its counsel.

As noted by the ALJ, the lease referred to in the stipulation had the same title (i.e., Outdoor Advertising Lease Agreement) as the lease admitted into evidence.  The stipulation stated PHS provided a "copy of the Outdoor Advertising Lease Agreement between PHS and AMG" to Caltrans and that the lease was the basis for Caltrans adding AMG as a responding party to the administrative action.  The lease admitted into evidence named AMG as the lessee, appears to be signed by Garcia, and pertains to advertising displays on the property.  Thus, "responsible persons . . . in the conduct of serious affairs" would reasonably conclude the stipulation referenced the lease admitted into evidence.

Furthermore, Champaneri and Anzo testified that they received a copy of the Outdoor Advertising Lease Agreement from a Caltrans attorney.  This testimony corroborates the admission in the stipulation that Caltrans received a copy of the lease from PHS.  Because PHS was the owner of the property and named as the lessor in the lease, Caltrans's receipt of the lease is evidence that the writing is what Caltrans claims it to be; a lease of the

14

property executed by AMG and PHS. While AMG objected to this testimony as hearsay, the ALJ properly considered the testimony as administrative hearsay. (See Gov. Code, § 11513, subd. (d).) Therefore, the stipulation, along with other circumstantial evidence, is sufficient authentication under the "responsible persons" test and satisfied Caltrans's initial burden of proof at the administrative hearing.

AMG argues another lease casts doubt on the authenticity of the lease provided by Caltrans. AMG cites to an email from a Los Angeles Deputy City Attorney referring to the November 2013 Outdoor Advertising Lease Agreement executed by Garcia that "matches the other lease agreement executed by Stephens," the third defendant in the parallel criminal case. The "other lease agreement executed by Stephens" was not admitted into evidence or even referenced in the administrative hearing. Rather, the email was attached to AMG's prior request to continue the administrative hearing based on the pending criminal proceeding. This additional lease was not attached to or detailed to any extent in the email. Thus, the email does not undermine Caltran's prima facie evidence of the authenticity of the lease.

AMG asserts that the ALJ's reliance on the stipulation violated Garcia's Fifth Amendment right against self-incrimination. Garcia is not a party to this appeal and AMG does not have standing to assert a claim on his behalf. (See Code Civ. Proc., § 902 [appeal may be taken only by an aggrieved party]; see also *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128 [appellant cannot assert error that injuriously affected another party], disapproved on another ground in *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260.) That said, Garcia was not a responding party in the administrative proceeding, and the stipulation was made on behalf of AMG only. The Fifth Amendment privilege against self-

15

incrimination applies to and may be invoked by, natural persons, not corporations or other organizations.  (*Braswell v. United States* (1988) 487 U.S. 99, 102.)  Counsel for AMG did not waive any such privilege by executing the stipulation on the corporation's behalf.

We conclude the ALJ did not prejudicially abuse his discretion in overruling AMG's objection to the admission of the Outdoor Advertising Lease Agreement and finding that Caltrans met its burden to authenticate the lease.  Thus, substantial evidence supports the ALJ's ruling on its admission.

### 2. *Sufficiency of the Evidence*

AMG argues there is insufficient evidence that it built and operated the billboard on the property.  The crux of AMG's argument is that the ALJ erred in admitting the Outdoor Advertising Lease Agreement into evidence, which we previously rejected.  We conclude the ALJ did not prejudicially abuse his discretion in finding there was sufficient evidence.

The Outdoor Advertising Lease Agreement, dated November 1, 2013, appeared to be signed by Garcia, the sole officer of AMG.  Once authenticated, the ALJ could reasonably infer that it was signed by Garcia. The lease stated that the "lessor" leased the property to AMG for 20 years "for the purpose of erecting and maintaining an advertising sign thereon." Caltrans presented undisputed testimony that the billboard was not permitted and remained on the property at the time of the administrative hearing.  Based on the lease, the ALJ could reasonably infer that AMG erected and maintained the billboard on the property.  There was no evidence presented to the contrary.  AMG points to the lease provision stating that the lease could be canceled within 120 days if the lessee (AMG) was unsuccessful

16

in obtaining the necessary entitlement to construct the sign. But again, there is no evidence that AMG did so, and it was reasonable for the ALJ to infer that AMG did not cancel the lease.

Therefore, we conclude substantial evidence supports the ALJ's findings that AMG operated and maintained the billboard on the property without a permit, in violation of the OAA.

3. *Garcia's Invocation of his Fifth Amendment Right*

AMG argues that, in finding Caltrans met its burden of proof to authenticate the Outdoor Advertising Lease Agreement, the ALJ made an adverse inference against the corporation when Garcia invoked his Fifth Amendment right and refused to testify. We are not persuaded. At the hearing and in his proposed decision, the ALJ noted that Caltrans met its initial burden, and AMG failed to provide any evidence to rebut Caltran's prima facie evidence of the authenticity of the lease.

AMG asserts that the ALJ's comments on Garcia's failure to testify were reminiscent of the error made in *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*). In *Griffin*, the United States Supreme Court held that a trial judge's and prosecutor's comments to a jury on the criminal defendant's failure to testify violated the self-incrimination clause of the Fifth Amendment. (See *Mitchell v. U.S.* (1999) 526 U.S. 314, 316–317 [citing *Griffin* and stating "[t]he normal rule in a criminal case permits no negative inference from a defendant's failure to testify"].) This is not a criminal case, and as previously stated, the ALJ did not comment on Garcia's assertion of the Fifth Amendment in issuing the decision. Rather, the ALJ found that AMG failed to present any evidence to refute it owned and operated the unpermitted billboard on the property. AMG also provides no authority

17

supporting the assertion that comments regarding a *witness's* failure to testify were a constitutional violation or, at the very least, improper. In fact, "while the [Fifth Amendment] privilege of a criminal defendant is absolute, in a civil case a witness or party may be required either to waive the privilege or accept the civil consequences of silence if he or she does exercise it." (*Alvarez v. Sanchez* (1984) 158 Cal.App.3d 709, 712.)[3]

## DISPOSITION

The judgment is affirmed. Caltrans is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.

MORI, J.

---

[3] To the extent AMG contends the ALJ violated Garcia's Fifth Amendment rights, AMG lacks standing to assert this constitutional claim on its officer's behalf. (See Code Civ. Proc., § 902; see also *Rebney v. Wells Fargo Bank, supra*, 220 Cal.App.3d at p. 1128.) As noted, Garcia was not a responding party in the administrative hearing nor is he a party to this appeal.

18